In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3183

FRANK BRUNKER,

*Plaintiff-Appellant,*

*v.*

SCHWAN'S HOME SERVICE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:04 CV 478—**James T. Moody**, *Judge.*

ARGUED SEPTEMBER 16, 2008—DECIDED OCTOBER 22, 2009

Before CUDAHY, FLAUM, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Frank Brunker sued Schwan's Home Service, Inc., his former employer, for disability discrimination and failure to accommodate in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* On appeal he challenges the district court's grant of summary judgment for Schwan's, in which the court determined that Brunker was not disabled. He also challenges earlier rulings denying his

motions to compel discovery and imposing sanctions on him for filing those motions. We reverse the grant of summary judgment, reverse the denial of a motion to compel, and vacate the award of sanctions.

## I.

Schwan's, a home-delivery food service, hired Brunker in November 2002 as a Route Manager for its Valparaiso Depot. As a Route Manager, Brunker sold and delivered frozen food and other company products to customers. In February 2003, Brunker started to experience shaking in his hands, slurred speech, dizziness, lightheadedness, and headaches. These symptoms occurred once or twice every day in February and made it difficult for him to write, walk, speak, and drive. The dizziness lasted up to four hours each day. Brunker's doctor performed an MRI and told him that he might suffer from multiple sclerosis. Brunker then gave Schwan's a note from his doctor requesting that he avoid driving until the cause of his dizziness was diagnosed. Schwan's responded by placing Brunker on disability leave.

Brunker's doctor wrote another note two months later, releasing him to return to light-duty work. He was still restricted from driving, so Schwan's assigned another employee to drive with him on his route. The following month Brunker returned to work without any restrictions and drove his route on his own, completing it just as quickly as he had in the past. Within four months of Brunker resuming his driving, Brunker told Chuck Ramey,

his then-supervisor, that he wanted to go to the Mayo Clinic for additional tests and treatment. Around the same time, Ramey wrote up Brunker for failing to run a rescheduled route.

On September 8, the day before Brunker left for the clinic, Ramey wrote up Brunker again, this time for writing a check with insufficient funds to a fellow employee; depositing a post-dated check from a customer earlier than instructed; and failing to adhere to Schwan's dress code. Ramey also insisted that Brunker's route books needed to be in order before he left. At the clinic, Brunker was diagnosed with multiple sclerosis, but his doctor noted that his dizziness episodes, previously a daily occurrence, had diminished in frequency. Brunker also told the doctor that his writing difficulty was now just "variable" and his speech slurred only when he was fatigued.

During the time Brunker was away at the Mayo Clinic, Ramey drove Brunker's route. Ramey claimed that Brunker had not been servicing hundreds of his customers and had falsified his daily records. When Brunker returned two weeks later, after being diagnosed with multiple sclerosis, Ramey fired him, citing "unsatisfactory performance" and "unable to perform essential job functions" on the termination form. He backdated the termination to September 9, the day Brunker left for the clinic and before his diagnosis of multiple sclerosis.

As discovery in the district court proceeded, Brunker sought to compel numerous discovery requests: Schwan's financial information; its anti-discrimination training;

and several personnel files (for route managers with light duty work, for route managers who were disciplined for dress-code or route-book violations, for his last and prior supervisors, for a terminated route manager (Barry Dwyer), and for a disabled route manager (Mike Devereaux)). He also requested that his former supervisor, Zoltan Szabo, who had accused Brunker of dishonesty, reveal the dishonest conduct that had led to his own termination. Schwan's opposed most of this discovery and contended that because Schwan's would rely only on Brunker's failure to service customers as the reason it fired him, other discipline that Brunker and his co-workers received was irrelevant.[1] It agreed, however, to

---

[1] The magistrate judge accepted this argument, but it is incorrect. An employer accused of discrimination cannot limit discovery simply by restricting during litigation its stated reasons for an adverse action. After all, the true reason behind the action is the very heart of the case, and Brunker presented evidence that Schwan's may have asserted reasons for firing him other than the one it relied on during litigation. An employer's shifting explanations are evidence that its stated reasons did not truly motivate the adverse action and that an impermissible one actually did. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 726 (7th Cir. 2005) ("[T]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.") (citation omitted); *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003) (same); *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 876-77 (7th

(continued...)

produce the personnel files of the route managers that Ramey supervised.

The magistrate judge denied Brunker's motion to compel on the grounds of irrelevancy and overbreadth. He then sanctioned Brunker in the amount of $4,423 for making those requests. Later, in response to Brunker's motion for reconsideration, the magistrate judge ordered Schwan's to produce records in the personnel file of one of Brunker's former supervisors who had participated in the termination, but refused to order production of any other requested materials.

Schwan's next moved for summary judgment, and Brunker responded that Schwan's was precluded from making arguments about facts on which it had refused discovery. Specifically, he argued that Schwan's had refused to produce personnel files relating to employee discipline, but then Schwan's discussed all the disciplinary action against Brunker (beyond his alleged failure to service customers). Schwan's also relied on the personnel files of Dwyer and Devereaux after refusing to produce those files. Brunker moved for the district court to strike those arguments—as the magistrate judge suggested he do if Schwan's used these materials—and presented what evidence was available to him to argue that Schwan's had not disciplined other employees for

---

[1] (...continued)
Cir. 2002) (same); *O'Neal v. City of New Albany*, 293 F.3d 998, 1006 (7th Cir. 2002) (same); *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 291 (7th Cir. 1999) (same).

similar misconduct. But the court denied the motion to strike as moot, reasoning that a jury could not find Brunker disabled because he was not substantially limited in a major life activity but rather was only "intermittently or temporarily impaired." It therefore granted Schwan's motion for summary judgment.

## II.

### A.  Summary Judgment

Brunker contends that he presented sufficient evidence to demonstrate that he is substantially limited in a major life activity. We review *de novo* a district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party. *Healy v. City of Chicago*, 450 F.3d 732, 738 (7th Cir. 2006). To survive summary judgment on his reasonable-accommodation claim, Brunker must offer evidence that he is a qualified individual with a disability; that Schwan's was aware of his disability; and that Schwan's failed to reasonably accommodate the disability. *See Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008). For his disparate-treatment claim, he must offer evidence that he suffered an adverse employment action; and that his disability was a determining factor behind the adverse action. *Germano v. Int'l Profit Ass'n, Inc.*, 544 F.3d 798, 806 (7th Cir. 2008). Thus, both claims require that Brunker be "disabled."

We begin our review by examining whether Brunker has provided sufficient evidence to create an genuine issue on whether he is disabled. Brunker is "disabled"

under the ADA if he has an impairment that substantially
limits a major life activity or if he is "regarded as" such.
*See* 42 U.S.C. § 12102; *Bodenstab v. County of Cook*, 569
F.3d 651, 656 (7th Cir. 2009). An impairment is a
disability only when its impact is permanent or long term,
29 C.F.R. § 1630.2(j)(2)(iii); *Kampmier v. Emeritus Corp.*, 472
F.3d 930, 937 (7th Cir. 2007). Examples of "intermittent"
impairments, which are not disabilities, include a broken
leg, appendicitis, or isolated bouts of depression. *Ogborn
v. United Food & Commercial Workers Union, Local No. 881*,
305 F.3d 763, 767 (7th Cir. 2002) (collecting cases). Al-
though Brunker suffers from multiple sclerosis, that fact
alone does not prove that he is disabled under the ADA.
Rather, we must consider the specific facts of Brunker's
case. *See Burnett v. LFW Inc.*, 472 F.3d 471, 483 (7th Cir.
2006).

Even when viewed in the light most favorable to
Brunker, his impairments are not sufficient to show that he
is disabled. In May 2003 his physician allowed him to
return to work without any restriction at all. Once he
returned, he drove the same route by himself and com-
pleted it just as quickly as he had in the past. In addition,
during Brunker's stay at the Mayo Clinic, the doctor
noted that his dizziness episodes, previously a daily
occurrence, were occurring less frequently. Brunker
also told the doctor that his writing difficulty was "vari-
able" and his speech slurred "at times when he is
tired." Accordingly, we agree with the district court's
conclusion that the evidence in this record shows only
"intermittent" difficulties rather than a substantial limita-
tion on a major life activity.

But Brunker's evidence was sufficient to show that Schwan's *regarded* Brunker as disabled. Under a "regarded as" theory, the plaintiff must demonstrate either that (1) the employer mistakenly believes that the employee has an impairment that substantially limits a major life activity, or (2) the employer mistakenly believes that an existing impairment, which is not actually limiting, does substantially limit a major life activity. *Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 641 (7th Cir. 2005). Major life activities covered by the ADA include "functions such as caring for [one's self], performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008).

The record contains adequate evidence to support a theory that Schwan's regarded Brunker as being disabled in the major life activities of walking, caring for himself, and speaking. For example, the day before he left for the Mayo Clinic, Schwan's issued Brunker multiple "corrective action reports," including a dress-code violation, suggesting that Schwan's did not believe that Brunker was able to care for himself because of his apparent condition. Furthermore, Schwan's disciplined him even though other employees were not cited for similar violations. As for Schwan's motive for firing Brunker, Schwan's fired Brunker immediately after he returned from treatment, but Schwan's backdated the termination notice to *before* he left for the clinic, evidently hoping to avoid the impression that his apparent condition influenced Schwan's decision to terminate him. These facts are

sufficient to create a triable question as to whether Schwan's regarded Brunker as disabled when it fired him.

Because we find a genuine issue as to whether Schwan's regarded Brunker as disabled, we must remand the disability-discrimination claim for further proceedings. But we see no triable case that Schwan's failed to accommodate his impairment. *See Mobley*, 531 F.3d at 545. Brunker asserts that Schwan's could have given him a light-duty position rather than what it actually provided: short-term disability leave and, later on, a second driver to help with his routes. But Schwan's was not required to provide Brunker's "ideal" accommodation, only that which is reasonable. *See Mays v. Principi*, 301 F.3d 866, 872 (7th Cir. 2002). Brunker never requested a light-duty position after his doctor released him to work without any restrictions. Even if he made the request, Schwan's provided options that effectively accommodated his limitations. *See Mobley*, 531 F.3d at 546-47. The district court did not address the accommodation question, but we may reach it "so long as that ground was adequately addressed in the district court and the nonmoving party had an opportunity to contest the issue." *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005). We therefore uphold the court's grant of summary judgment on Brunker's reasonable-accommodation claim.

### B.  Discovery Requests

Brunker first argues that he was entitled to Schwan's financial records and the files of employees who requested light-duty work, because those records may have refuted

any claim by Schwan's that an accommodation would be an undue hardship. *See* 42 U.S.C. § 12111(10). Although this information was once relevant, it no longer has any bearing on the case. Undue hardship is relevant only to the reasonable-accommodation claim, *see* 42 U.S.C. § 12111(10). As we affirm the grant of summary judgment on that claim, Brunker was not prejudiced by the denial of this information.

Brunker next asserts that the magistrate judge erred in denying his motion to compel his former supervisor, Zoltan Szabo, who had accused Brunker of dishonesty, to explain what dishonest conduct resulted in Szabo's own discharge from Schwan's. Brunker contends that the information is a specific instance of Szabo's character for truthfulness. FED. R. EVID. 608(b). We agree. Under federal law, "specific instances of the conduct of a witness, . . . in the discretion of the court, if probative of truthfulness or untruthfulness, can be inquired into on cross-examination" concerning the witness's "character for truthfulness or untruthfulness." FED. R. EVID. 608(b); *Price v. Thurmer*, 514 F.3d 729, 731 (7th Cir. 2008). Even if, as Schwan's argues, Szabo did not participate in Brunker's termination, he was a potential witness for Schwan's, and Brunker was entitled to the information to prepare for possible cross-examination. Accordingly, we reverse the denial of his motion to compel Szabo's answer. *See, e.g., Young v. James Green Mgmt, Inc.*, 327 F.3d 616, 626-27 (7th Cir. 2003).

Brunker also asserts that the magistrate judge erred in denying his motion to compel the production of the

personnel files of supervisors not involved in his termination and of information about Schwan's anti-discrimination training. He argues that this information may reveal a possible pattern of discrimination and a basis for punitive damages.

Magistrate judges and district courts have broad discretion to limit a request for the discovery of personnel files, in order to prevent the dissemination of personal or confidential information about employees. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). The court should consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it," and taking into account society's interest in furthering "the truth-seeking function" in the particular case before the court. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citation omitted). Here, the magistrate judge properly found irrelevant the discovery requests regarding discrimination from supervisors who were not involved with Brunker's termination. *See Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004) (holding that evidence of discipline by a supervisor not involved in the adverse employment decision "sheds no light" on plaintiff's discrimination claim). The information Brunker requested about the company's anti-discrimination training, however, was relevant to the question of punitive damages. *See Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 482 (7th Cir. 2003). Thus, discovery on that point should have been allowed on this issue.

Brunker also contests the magistrate judge's denial of his motion to compel the production of the personnel files of

route managers overseen by other supervisors. He cites *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404-05 (7th Cir. 2007), *aff'd*, 128 S.Ct. 1951 (2008), for the proposition that the magistrate judge could have more flexibly applied the criteria that defines which other employees are similarly situated. But we see no abuse in the magistrate judge's examination of the factors for similarly situated employees: factors such as whether the employees had the same supervisor, were subject to the same standards, had the same job description, or had comparable experience, education, and other qualifications. *See Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008). Even in *Humphries*, the "similarly situated" employees had the same duties and the same supervisor. 474 F.3d at 406. The magistrate judge appropriately considered these established factors.

## C. Sanctions

Brunker also contests the sanction of fees that the magistrate judge awarded to Schwan's because of Brunker's motions to compel. We vacate a magistrate judge's choice of sanctions only when no reasonable person would agree that the sanctions were appropriate, *see Maynard v. Nygren*, 372 F.3d 890, 893 (7th Cir. 2004). We must vacate them in this instance because the magistrate judge unreasonably imposed them in response to Brunker's discovery requests. First, we have already ruled that the magistrate judge improperly denied part of the requested discovery (regarding Szabo's dishonesty). Second, after Brunker asked for reconsideration, the

magistrate judge himself allowed discovery of the personnel file of the former supervisor involved in the termination. Thus, those requests were not unjustified, and sanctions would be inappropriate. *See* FED. R. CIV. P. 37(a)(5)(B). In addition, Brunker's request for information on whether Schwan's disciplined other employees who failed to follow its dress code or to keep accurate route books was justified because, despite Schwan's promise that in its motion for summary judgment it would not rely on Brunker's discipline for these offenses, it did so anyway. Schwan's responds that it used the information in its summary judgment motion only to prove that Brunker was not performing his job satisfactorily. *See Squibb v. Mem'l Med. Ctr*, 497 F.3d 775, 788 (7th Cir. 2007). But that explanation concedes that the information was relevant to Brunker's disparate-treatment claim because it relates to the even-handedness of the company's expectations.

Indeed, Schwan's went further than merely raising an issue that it had previously argued was irrelevant. It faulted Brunker for failing to identify any route manager who had "similar performance issues" and was treated more favorably. And Schwan's also discussed the route manager (Barry Dwyer) who was terminated for failing to service customers, despite Schwan's successful opposition to Brunker's request for his personnel file. Similarly, Schwan's denied the relevancy of the personnel file of another former employee, Mike Devereaux, but then used parts of that file in the summary judgment reply. Through its actions, Schwan's concedes that the bulk of Brunker's requests were substantially justified. We therefore vacate the award of sanctions.

### III.

Accordingly, we AFFIRM in part, VACATE and REVERSE in part, and REMAND for proceedings consistent with this opinion. Brunker should be allowed additional discovery as we have outlined above. Circuit Rule 36 shall apply on remand.