In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1353

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant,*

*v.*

AUTOZONE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:07-cv-01154—**John A. Gorman**, *Magistrate Judge.*

ARGUED SEPTEMBER 15, 2010—DECIDED DECEMBER 30, 2010

Before MANION, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* From 1999 until 2004, John Shepherd worked as a parts sales manager at AutoZone, a vehicle services company, in Macomb, Illinois. In 2005, AutoZone terminated Shepherd's employment after keeping him on medical leave involuntarily for over a year. The Equal Employment Opportunity Commission filed this suit on Shepherd's behalf under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213.

The EEOC alleged that AutoZone violated the ADA in three ways: first, by failing to accommodate Shepherd's physical limitations from March 2003 until September 2003; second, by discriminatorily denying Shepherd the opportunity to work after September 2003; and third, by terminating him in retaliation for filing charges against the company. The district court granted summary judgment for AutoZone on the first claim, finding that the EEOC had not shown that Shepherd had a disability within the meaning of the ADA as is required to demonstrate a failure to accommodate. A jury later ruled in favor of AutoZone on the discriminatory treatment and retaliation claims. The district court then denied the EEOC's motion to alter the judgment and for a partial new trial.

The EEOC appeals only the district court's grant of summary judgment on the failure-to-accommodate claim. It argues that there are genuine issues of material fact whether Shepherd had a disability and whether AutoZone therefore violated the ADA by failing to reasonably accommodate Shepherd's known physical limitations. Because we find that a reasonable jury could conclude that Shepherd had a disability under the ADA, we reverse and remand the case for further proceedings.

*Facts and Procedural Background*

John Shepherd began working for AutoZone in April 1998 as a salesperson in AutoZone's store in Fort Madison, Iowa. In April 1999, he was promoted to parts sales manager and transferred to the store in Macomb,

Illinois, where he remained a parts sales manager until he was fired in 2005.

As a parts sales manager, Shepherd's responsibilities included working closely with customers and engaging in "manual tasks" such as routine cleaning and maintenance of the store, stocking shelves, and moving merchandise. At each store, daily tasks were distributed randomly through a computer-generated assignment system to the employees on duty, including the parts sales manager, though the store manager maintained discretion to re-assign tasks.

Prior to his work at AutoZone, Shepherd had sustained an injury to his back that limited his ability to carry out many activities requiring physical exertion. He experienced onsets of debilitating pain, referred to by the parties as "flare-ups," when carrying out tasks that required him to lift things or to twist or rotate his torso. During a flare-up, Shepherd's neck and back would swell and he would sweat profusely. Headaches, which also could lead to vomiting, often accompanied the swelling.

Beginning in 1998, Shepherd received medical treatment from Dr. Marc Katchen, who described Shepherd's impairment as myofascial tenderness, an intermittent condition caused by tightening of the muscles upon certain movements. The parties disagree about exactly when Shepherd disclosed his condition to AutoZone management. Shepherd's supervisors knew about his condition no later than March 2002, though they may have known as early as 1998, the year he joined the company.

Shepherd's impairment led to his taking medical leaves of absence of one to three weeks in January 2001, October 2001, June 2002, and March 2003. When Shepherd returned to work in July 2002 after his third leave of absence, he provided his supervisors with a medical evaluation prepared by Dr. Katchen. The evaluation listed physical restrictions that Dr. Katchen recommended for Shepherd if he felt unwell. Based on Dr. Katchen's recommendation that he avoid twisting his upper body, Shepherd requested permission to refrain from mopping. Although store managers Terry Wilmot and Steve Thompson knew of the restriction, they informally accommodated Shepherd only some of the time. Wilmot and Thompson would sometimes re-assign mopping tasks from Shepherd to other employees, though district manager Steven Smith pressured them not to give Shepherd "any preference."

After Shepherd's leave of absence from the end of March 2003 through the beginning of April 2003, Dr. Katchen again prepared a medical evaluation for Shepherd's AutoZone supervisors. The doctor recommended that Shepherd never mop or buff the floor. When Smith learned of this evaluation, he told Shepherd that he would not be able to return to work with such a restriction. Dr. Katchen then amended his prescribed restriction to allow Shepherd to return to work, changing it from "never" to only "occasionally."

On September 13, 2003, Thompson instructed Shepherd to mop the floor. Shepherd injured himself while wringing out the mop and was again placed on medical

leave. In December 2003, Shepherd underwent an independent medical examination in connection with a workers' compensation claim then pending against AutoZone. The medical examiner found that Shepherd's September 2003 injury had resolved and that he could return to work with whatever restrictions were in place prior to his taking leave. On January 16, 2004, Dr. Katchen also authorized Shepherd's return to work with increased medical restrictions, including a lift limit of ten to nineteen pounds, a limitation on time spent standing, and a prohibition on upper body twisting. Despite these two medical evaluations, AutoZone did not allow Shepherd to return to work, instead keeping him on involuntary medical leave until February 2005, when the company discharged him.

The EEOC filed a complaint on Shepherd's behalf in the Central District of Illinois. Pursuant to 28 U.S.C. § 636(c), the parties consented to have their case decided by a magistrate judge. AutoZone moved for summary judgment on all of the EEOC's claims. Relevant to our review, AutoZone contended in its motion that the EEOC had not shown any failure to accommodate Shepherd between March and September 2003 because it had not proved that he was disabled within the meaning of the ADA. The district court agreed, finding that Shepherd was not substantially limited in the major life activity of caring for himself prior to September 2003 and, as a result, could not be considered disabled under the ADA. The court concluded that the EEOC was therefore unable to establish a failure-to-accommodate claim during the relevant time, and granted AutoZone's motion on that claim. The EEOC now appeals, arguing that

disputed issues of fact exist as to whether Shepherd was disabled within the statutory meaning.[1]

## *Discussion*

We review the grant of summary judgment de novo and assess the evidence in the light most favorable to the EEOC as the non-moving party. *Fredricksen v. United Parcel Service, Co.*, 581 F.3d 516, 520 (7th Cir. 2009). We will affirm summary judgment if there is not sufficient evidence to conclude that the non-moving party has raised a genuine issue of material fact. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

---

[1] The district court correctly identified the components of the reasonable accommodation test in the first part of its decision, citing the three-step inquiry outlined by the Supreme Court in *Bragdon v. Abbott*, 524 U.S. 624 (1998). When applying the facts to the law, however, the court appears to have mistakenly applied an element of the disparate treatment test as part of its evaluation of reasonable accommodation. The court strayed from the reasonable accommodation test it had identified by requiring that the EEOC demonstrate an adverse employment action against Shepherd. No adverse employment action is required to prove a failure to accommodate. See *Bragdon*, 524 U.S. at 631; see also *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001) (describing and applying the same test for determining whether an individual is a qualified individual with a disability under the ADA); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437-40 (7th Cir. 2000) (same). This misstep was not decisive for the court's judgment; we raise it only to alert the district court so that it may avoid proceeding down that same path on remand.

An employer violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . , unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A) (2006); see also *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 796-97 (7th Cir. 2005).[2] In its motion for summary judgment, AutoZone argued that Shepherd was not a "qualified individual with a disability" from March 2003 through September 12, 2003. Though AutoZone acknowledged that Shepherd suffered from an impairment throughout the relevant time, it contended that Shepherd's impairment did not constitute a "disability" as defined by the ADA. AutoZone also asserted that even if Shepherd were considered disabled, he could not, with or without reasonable accommodation, perform the essential functions of his position. Finally, AutoZone contested the EEOC's claim that it failed to provide Shepherd a reasonable accommodation that he needed to perform the essential functions of his position. We do not reach the latter two issues. The district court did not proceed beyond a determination of whether Shepherd was disabled, and the EEOC's

---

[2] After this case was filed, Congress made significant changes to the ADA that took effect January 1, 2009. See ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. Because Congress did not express its intent for these changes to apply retroactively, see *Fredricksen*, 581 F.3d at 521, we cite, quote, and apply the ADA as it stood before the amendments.

claim on appeal concerns only AutoZone's treatment of Shepherd and his condition from March 2003 through September 12, 2003.

AutoZone also argues on appeal that the EEOC was required to present medical testimony to prove that Shepherd was disabled within the meaning of the statute. Thus, we review whether the evidence would allow a reasonable jury to conclude that Shepherd was disabled within the meaning of the ADA, and within this analysis, we take up AutoZone's assertion that medical testimony was required.

I. *Significant Limits on Personal Care*

The ADA defines "disability" as (a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. See 42 U.S.C. § 12102(2) (2006). The EEOC relies on subsection (a), a physical impairment that substantially limits a major life activity, to argue that Shepherd was disabled from March 2003 to September 12, 2003, because his condition substantially limited his ability to engage in the major life activity of caring for himself.

Our role is not to decide whether Shepherd was actually disabled under the ADA. Rather, we need decide only whether a rational jury, viewing any conflicting evidence in the light most favorable to the EEOC, could so decide. We believe it could do so easily. We focus on

the two parts of the statute's definition of disability: First, the EEOC must demonstrate that Shepherd's impairment limited a major life activity, for which we examine the law and the evidence regarding Shepherd's ability to care for himself. See 42 U.S.C. § 12102(2)(A) (2006). Second, the EEOC must further show that his limitation on a major life activity was substantial. See *id.* We identify disputed issues of material fact with respect to both parts.

### A. *Limitations on Self-Care*

Self-care has long been recognized as a major life activity under the ADA. The federal regulations adopted in the year following the passage of the Act listed "caring for oneself" as a major life activity. See 29 C.F.R. § 1630.2(i). Courts followed suit. See *Holt v. Grand Lake Mental Health Center, Inc.*, 443 F.3d 762, 767 (10th Cir. 2006) (recognizing self-care as a major life activity under the ADA); *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 47 (2d Cir. 2002) (providing examples of limitations on self-care); *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 780-81 (6th Cir. 1998) (identifying caring for oneself as a recognized major life activity under the Act); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995) (caring for oneself encompasses a broad range of normal activities related to daily living, including feeding oneself, driving, grooming, and cleaning home).

We ruled in *Nawrot v. CPC International*, 277 F.3d 896, 904-05 (7th Cir. 2002), that an employee's inability

to administer his own diabetes medication also amounted to a limitation on the major life activity of self-care. Likewise in *Brunker v. Schwan's Home Service*, 583 F.3d 1004, 1008-09 (7th Cir. 2009), we found that not being able to dress oneself appropriately constituted evidence of a limitation on the major life activity of self-care. Our application is consistent with the purpose of the ADA to "provide a clear and comprehensive national mandate" to combat disability discrimination. Americans with Disabilities Act of 1990, Pub. L. No. 101-336, § 2, 104 Stat. 327, 329; see also ADA Amendments Act of 2008 § 1(b), 122 Stat. at 3554 (elaborating on a broad scope of protection intended by Congress to be available under the original Act); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 495 (1999) (Stevens, J., dissenting) (noting that the ADA was meant to serve a remedial purpose). The specific inclusion of "caring for oneself" in the 2008 Amendments' list of major life activities further supports this interpretation. See ADA Amendments Act of 2008 § 4(a), 122 Stat. at 3555, amending 42 U.S.C. § 12102.

Shepherd testified at his deposition that he needed assistance with dressing himself, brushing his hair, and bathing four or five days each week while he was working at AutoZone prior to September 13, 2003. He also recalled experiencing other difficulties since 2003, including an inability to tie his shoes and the development of oral hygiene problems that resulted from his inability to care for his teeth properly. Shepherd's wife, Susan Shepherd, also testified that she had to assist him with personal care while he was working at AutoZone. According to her deposition testimony, she had to

help Shepherd with showering, putting on his pants and shoes, and brushing his hair and teeth before he stopped working for AutoZone.

There is some ambiguity in Susan's testimony regarding exactly when Shepherd began having difficulty with certain personal tasks. Though Susan said she assisted him with his personal tasks "before he stopped working for AutoZone," at other times in her May 2008 deposition, she testified that Shepherd's difficulties with these tasks began "three or four years ago." For purposes of summary judgment, however, AutoZone removed much of the ambiguity in its own statement of undisputed facts filed to support its summary judgment motion. There, AutoZone stated: "Shepherd has needed assistance with dressing himself, brushing his hair and bathing on a daily basis from approximately the year 2003 or 2004 to the present time"; "[s]ince 2003, Shepherd's wife has assisted him with washing his back"; "[s]ince 2003, Shepherd has had difficulty brushing his teeth; "during [his flare-ups] . . . he would not be able to put on his own pants, his own shoes, brush his hair, or brush his teeth"; and, "Shepherd would not be able to wash his own hair, back or feet when having these flare-ups."

These statements by AutoZone as well as the Shepherds' testimony could be understood to mean that Shepherd's limitations on his ability to care for himself began at any point during or immediately after 2003. At the summary judgment stage, any ambiguity must be resolved in favor of the non-moving party. It was the

responsibility of the questioning attorney at the deposi-
tion to clarify the facts if the attorney intended to move
for summary judgment on the basis of these answers.
Particularly here, where one of the key issues was the
time period during which Shepherd was affected by
his condition—March through September 12, 2003—
AutoZone could have asked follow-up questions to try
to get more specific answers from the Shepherds. For
the purposes of summary judgment, the testimony by
Susan Shepherd was consistent with her husband's testi-
mony to the effect that Shepherd was limited in caring
for himself between March and September 2003.

B. *"Substantially" Limited*

We turn now to examine whether the facts support a
conclusion that Shepherd was "substantially" limited in
caring for himself. We follow the Supreme Court's rea-
soning in *Toyota Motor Manufacturing, Kentucky, Inc. v.
Williams*, 534 U.S. 184, 196 (2002), such that our consider-
ation of this term is "guided first and foremost by
the words of the disability definition itself."[3] Looking to

---

[3] The ADA Amendments Act of 2008 superseded *Williams* by
expressly rejecting the Court's narrow interpretation of the
terms "substantially limits" and "major life activity" in favor
of a broader interpretation. Part of Congress's purpose in
enacting the Amendments was to make clear its intent that
the determination of whether an individual has a disability
under the ADA "should not demand extensive analysis."
(continued...)

Webster's Dictionary and the Oxford English Dictionary, the Court determined that "substantially" in the phrase "substantially limits" means "considerable" or "to a large degree." 534 U.S. at 196-97. This less-than-precise meaning of the term indicates that the ADA "precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." *Id.* at 197.

The implementing federal regulation states a little more clearly that "substantially limits" means that an individual is:

> (i) Unable to perform a major life activity that the average person in the general population can per- form; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which

---

[3] (...continued)

ADA Amendments Act of 2008 § 2(b)(5), 122 Stat. at 3554. Of particular note, Congress stated that the term "substantially limits" should be interpreted broadly to provide wide cover- age. See *id.* § 2(a)(1), 122 Stat. at 3553. As we have said, be- cause there is no indication that Congress intended the ADA Amendments to have retroactive effect, we rely on the ADA as it existed at the time of the relevant events, and on the case law, including *Williams*, interpreting that version of the statute and implementing regulations. We reach our conclusion that the EEOC has raised a genuine question for trial even without the clarifying language in the Amendments, which only underscores our conclusion.

the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The regulation provides that when determining whether a limitation is "substantial," we consider "[t]he nature and severity of the impairment; [t]he duration or expected duration; and [t]he permanent or long term impact, or the expected permanent or long term impact of . . . the impairment." 29 C.F.R. § 1630.2(j)(2); see also *Williams*, 534 U.S. at 196 (looking to the regulation for guidance on the meaning of "substantially limited"); *Hamm v. Runyon*, 51 F.3d 721, 725 (7th Cir. 1995) (same).

We have already addressed the nature and severity of Shepherd's impairment in our description of the limitations he faced. The Shepherds testified, and AutoZone did not dispute (for purposes of summary judgment), that before Shepherd went on leave in 2003, he needed assistance with the most basic personal care tasks when a flare-up occurred.

With respect to the duration and impact of his impairment, Susan testified that Shepherd experienced flare-ups "[a]t least four to five times a week" while he was still working at AutoZone. Shepherd also testified that he needed assistance with his personal care "maybe four or five days" each week "prior to September 13, 2003." As noted above, there were portions of the Shepherds' testimony that were less specific or that superficially appeared to contradict other portions, but for the purposes of our review, we view the evidence in the light most favorable to the non-moving party. And again,

AutoZone provided its own clarification in its list of undisputed facts accompanying its summary judgment motion. In addition to its statement that Shepherd needed assistance "on a daily basis," AutoZone wrote that "Shepherd was experiencing these [flare-ups] four to five times a week before he went on leave of absence from AutoZone." On the basis of the significant limits on his personal care almost every day during the relevant period, a reasonable jury could easily find Shepherd's limitations to be substantial.

AutoZone contends that even if Shepherd's condition was limiting, it was not "substantially" limiting because it was only episodic or sporadic. Relying on our discussion in *Brunker*, AutoZone asserts that because a broken leg, appendicitis, or isolated bouts of depression did not qualify as disabilities, Shepherd's episodic flare-ups should not qualify either. We do not agree.[4]

Shepherd's impairment in this case, a permanent condition that affected his personal care almost daily, is not comparable to the temporary or sporadic examples we listed in *Brunker*. The limitations Shepherd faced in his self-care every day or almost every day are not commensurate with the temporary limitations posed by

---

[4] Although we do not rely on the 2008 Amendments, we note that Congress addressed this issue for future cases there, stating: "An impairment that is episodic . . . is a disability if it would substantially limit a major life activity when active." ADA Amendments Act of 2008 § 4(a), 122 Stat. at 3556, codified at 42 U.S.C. § 12102(4)(D).

a broken leg or appendicitis, nor were they isolated. AutoZone's additional reliance on *Moore v. Hunt Transport, Inc.*, 221 F.3d 944 (7th Cir. 2000) is also misplaced. Moore suffered from rheumatoid arthritis, an inflammatory disease of the joints that causes the joints to swell and stiffen and that is prone to intermittent flare-ups. AutoZone points to our statement that Moore's "infrequent flare-ups . . . [did not] render his condition a disability," but Moore's flare-ups occurred only "one or two [times] per year." 221 F.3d at 952. Even with generous math, the occurrence of Shepherd's flare-ups four or five times a week was still greater than the frequency experienced by the plaintiff in *Moore* by a factor of over one hundred.

We find more apposite guidance in *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, where we noted that an episodic condition should not detract from the substantiality analysis. The plaintiff in *Sears* suffered from a permanent neuropathy that substantially limited her ability to walk. We found that "a predictable yet intermittent pattern" of impairment was sufficient to survive a motion for summary judgment. 233 F.3d at 440 n.4 ("the fact that [the] condition was episodic is not dispositive in the disability inquiry"). Likewise, in *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591 (7th Cir. 1998), we treated "episodic flares," characteristic of lupus, as a disability under the ADA. 151 F.3d at 599-600. The *Haschmann* plaintiff's episodic flares of lupus are more similar to Shepherd's flare-ups of myofascial tenderness than the broken leg or isolated episodes of depression we addressed in *Brunker*.

In its order granting summary judgment for AutoZone, the district court distinguished Shepherd's situation from *Sears* and *Haschmann*, as well as from our similar holding in *Vande Zande v. State of Wisconsin Department of Administration*, 44 F.3d 538 (7th Cir. 1995), that pressure ulcers resulting from paralysis were intermittent impairments characteristic of an admitted disability. The court differentiated them on the basis that the "progressive diseases" in our prior cases were different from a soft tissue neck or back injury like Shepherd's which, the court stated, could not be diagnosed in the absence of flare-ups. Even if that were medically correct, we do not see a sound legal difference in the court's application of the statute to the facts of this case.

The assessment of an impairment under the ADA is a highly individualized examination that considers the facts of each case independently in light of the statutory and regulatory language. See *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 938 (7th Cir. 2007) (noting that "whether or not a medical condition rises to the level of a disability is to be made on an individualized case-by-case basis"). A reasonable jury could readily determine from the totality of the evidence in this record that Shepherd was substantially limited in his ability to care for himself from March 2003 to September 2003.

II.  *Asserted Need for Medical Evidence*

AutoZone also argues that an employee must provide medical evidence of his or her substantial limitations to satisfy the terms of the ADA. We do not read either the

statute or our prior case law as imposing a requirement that the plaintiff provide medical testimony in all cases, or in this one.

No language in the ADA or implementing regulations states that medical testimony is required. In fact, the Supreme Court has concluded very much to the contrary. The *Williams* Court noted that it is "insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." 534 U.S. at 198, quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999) (internal quotation marks and alterations omitted); see also *Haynes v. Williams*, 392 F.3d 478, 482 (D.C. Cir. 2004) ("Whatever the comparative credibility of medical versus personal testimony, a plaintiff's personal testimony cannot be inadequate to raise a genuine issue regarding his 'own experience.'"). That is exactly what the EEOC showed here through Shepherd's testimony, corroborated by Susan's testimony.

Neither do our cases hold any differently. In *Fredricksen v. United Parcel Service*, the case on which AutoZone primarily relies, plaintiff Fredricksen suffered from leukemia and asserted that he was substantially limited in the major life activities of walking and breathing. To corroborate his assertions, he described in vague generalities how he had less stamina to be as mobile as he once was. We held that Fredricksen had not met his burden

of demonstrating he was substantially limited; he was merely "moderately limited." As a separate and independent consideration, we observed that there was no medical evidence to support his argument about the duration or impact of the difficulties he faced. This observation was limited to Fredricksen's case, in reference to his particular condition and the activities he asserted.

Similarly in *Squibb v. Memorial Medical Center*, 497 F.3d 775, 784 (7th Cir. 2007), another case that AutoZone cites, we concluded that the evidence presented by the plaintiff was not sufficient to defeat a motion for summary judgment on the plaintiff's self-care disability claim; however, we voiced no opinion as to the necessity of expert corroboration.

Here, in contrast to the circumstances in *Fredricksen* and *Squibb*, the Shepherds each testified about specific activities and instances that caused Shepherd pain, the cumulative effect of which demonstrates what could easily be considered a "substantial" limitation. Moreover, Shepherd's condition and its possible ramifications were well-documented by medical professionals, including restrictions on his movement that would prevent him from carrying out the most basic household and personal chores.

In other contexts, we have taught that expert testimony is unnecessary to establish causation in cases where a lay-person can understand an injury or condition. See *Wallace v. McGlothan*, 606 F.3d 410, 420 (7th Cir. 2010). When an individual suffers from a basic and obvious injury when hit by a vehicle, for example, he or she does not need to produce expert testimony to show that the

collision was the cause of the injury. See *Moody v. Maine Central Railroad Co.*, 823 F.2d 693, 695 (1st Cir. 1987). This reasoning extends to the scope of a physical limitation like Shepherd's which is obvious to an observer and easily described by the sufferer.

In this case, where both the Shepherds' testimony described in detail the limitations Shepherd faced in his ability to care for himself and where his impairment was well-documented, we see no need for additional testimony regarding the extent of his limitations. The limits of Shepherd's personal care are the stuff of everyday experience. At least in this case, no medical evidence about Shepherd's precise limitations was necessary to defeat AutoZone's summary judgment motion.

## *Conclusion*

The evidence the EEOC has presented is plainly susceptible to the determination that Shepherd had a disability within the meaning intended by the ADA as required to prove a failure to accommodate. Summary judgment should not have been granted on the basis that Shepherd was not disabled. We REVERSE and REMAND for further proceedings consistent with this opinion.