In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 22-2945

JEFFREY BRUNO,

*Plaintiff-Appellant,*

*v.*

CHASITY WELLS-ARMSTRONG, JAMES ELLEXSON,
and CITY OF KANKAKEE, ILLINOIS,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:20-cv-02052 — **Colin S. Bruce**, *Judge.*

_____

ARGUED SEPTEMBER 19, 2023 — DECIDED FEBRUARY 23, 2024

_____

Before EASTERBROOK, WOOD, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Jeffrey Bruno, a veteran firefighter with the Kankakee Fire Department (KFD), suffered a severe cardiac event in September 2017. After he recuperated and returned to work, Mayor Chasity Wells-Armstrong promoted him to Deputy Chief. But in the summer of 2019, after Bruno had worked in that position for over a year, Wells-Armstrong denied him a raise and then presented him with an

employment contract that conditioned additional compensation on his enrollment in college courses. Bruno asked James Ellexson, the Human Resources Director for the City of Kankakee, to remove this education condition as an accommodation under the Americans with Disabilities Act because his heart condition prevented him from attending classes. But Ellexson refused. Bruno signed the contract nonetheless and retired soon thereafter.

Bruno then sued Wells-Armstrong, Ellexson, and the City of Kankakee, alleging, among other claims irrelevant on appeal, discrimination and retaliation under the ADA, 42 U.S.C. § 12101 et seq., and the Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101 et seq. The district court granted summary judgment for the defendants. Bruno's discrimination claim fails because his request to waive the education condition was not a request for a reasonable accommodation and he has failed to show that the defendants' reason for denying him a raise was pretextual. His retaliation claim fails because he did not engage in protected activity under the ADA. Thus, we affirm.

## I

### A

Jeffrey Bruno, a firefighter with the KFD for over two decades, was a line captain in the summer of 2017. After the KFD Chief advised him that returning to college could improve his chances of being promoted to Assistant Chief, Bruno enrolled in college courses in August 2017. But in September 2017 he suffered an aortic dissection which prevented him from continuing classes.

After recovering, he returned to work in December 2017 and applied to be Assistant Chief later that month. Despite

knowing that Bruno lacked a bachelor's degree, in early 2018, Mayor Chasity Wells-Armstrong selected Bruno to be the Assistant Chief (the title was later changed to Deputy Chief) over candidates with bachelor's and master's degrees. After his promotion, Bruno reenrolled in college courses for the 2018 spring semester but did not continue beyond that semester because his doctor advised him to stop attending.

Bruno worked as Deputy Chief for the entirety of 2018 without a contract. In January 2019, Wells-Armstrong and Ellexson presented him with a contract covering February 6, 2018, to April 30, 2019, that required him to enroll in college courses to keep his position. Bruno asked that the provision be removed. Ellexson agreed, and Bruno was permitted to remain Deputy Chief without enrolling if he obtained a doctor's note excusing him from taking classes, which he did.

Months later, in the summer of 2019, Wells-Armstrong decided to deny Bruno a raise because of his perceived insubordination—a failure to "separate from the ranks." This stemmed from concerns that Bruno had leaked information from a confidential management discussion and criticized Ellexson's management decisions to rank-and-file firefighters. In July 2019, Ellexson directed Bruno to cease speaking with a KFD firefighter who had sued the City for sex discrimination. But Bruno defied that directive and continued to speak with her. Ellexson and Wells-Armstrong believed that Bruno had shared information with the firefighter because her lawsuit included information known only to Ellexson, Bruno, and the KFD Chief. Bruno claimed he was unaware of any issue of trust until August 2019. But before that date, he had participated in a counseling session with Ellexson to discuss

leadership and the expectations for the position which cov-
ered the importance of confidentiality.

Though she decided to not give Bruno a raise, Wells-Arm-
strong (and Ellexson) still offered Bruno a new contract on
July 31, 2019, covering May 1, 2019, to April 30, 2020, that
would entitle him to additional compensation if he returned
to college. Bruno again requested that the education condition
be removed as an accommodation under the ADA. This time,
Ellexson refused to waive the provision, asserting that its re-
moval was not a reasonable accommodation. Bruno signed
the contract anyway, but soon after submitted his retirement
paperwork and ceased his employment with the KFD.

B

Bruno sued Wells-Armstrong, Ellexson, and the City of
Kankakee, raising a number of state and federal claims, in-
cluding: (1) disability discrimination under the ADA, 42
U.S.C. § 12112(a), and IHRA, 775 ILCS 5/2-102(A); (2) retalia-
tion under the ADA, 42 U.S.C. § 12203(a), and IHRA, 775 ILCS
5/6-101(A); and (3) indemnification under Illinois law, only
against the City, 745 ILCS 10/9-102.

Bruno pursued two theories of disability discrimination:
(1) failure to accommodate premised on the rejection of his re-
quest to waive the education condition; and (2) disparate
treatment based on the decision to deny him a raise. See
*Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019) (noting
that the ADA defines disability discrimination "to include
disparate treatment and failure to accommodate"). In grant-
ing summary judgment for the defendants on the failure to
accommodate theory, the district court focused on whether
the defendants' refusal to waive the education condition was

an adverse employment action. It observed that our cases have held that denial of a raise is an adverse employment action, but a denial of a bonus is not. It then concluded that because the pay bump was a bonus, the denial of the pay bump via the refusal to waive the education condition was not an adverse action and thereby could not serve as the basis for a failure to accommodate. But an adverse employment action is not required to prevail on a failure to accommodate theory. *E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635, 638 n.1 (7th Cir. 2010). Nonetheless, Bruno's failure to accommodate theory still fails because, as explained below, his request was not for a reasonable accommodation.

The court also rejected Bruno's disparate treatment theory. The defendants conceded that their decision to not raise Bruno's salary in the second contract was an adverse employment action that could support a claim of discrimination under a disparate treatment theory. But they argued that Bruno could not prevail because they had a legitimate, nondiscriminatory reason for the decision which he could not show was pretextual. The district court agreed and found for the defendants on Bruno's ADA discrimination claim.

Finally, the district court rejected Bruno's retaliation claim because he did not engage in any activity protected by the ADA. And because his state law claims under the IHRA and for indemnification rise or fall with his ADA claims, the district court also granted judgment for the defendants on those claims.

## II

Bruno appeals the district court's grant of summary judgment on his ADA discrimination and retaliation claims,

identical IHRA claims, and claim for indemnification. We review a district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *E.E.O.C. v. Charter Commc'ns, LLC*, 75 F.4th 729, 732 (7th Cir. 2023).

A

Bruno first challenges the district court's conclusion that the refusal to waive the education condition could not support recovery for failure to accommodate under the ADA. The ADA bars discrimination against a qualified person "on the basis of disability." 42 U.S.C. § 12112(a). The failure to accommodate theory of recovery arises out of the language of 42 U.S.C. § 12112(b)(5), which defines discrimination to include "not making reasonable accommodations." Recovery under a failure to accommodate theory requires proof that (1) the plaintiff was a qualified individual with a disability; (2) the defendant was aware of the plaintiff's disability; and (3) the defendant failed to reasonably accommodate the plaintiff's disability. *Scheidler*, 914 F.3d at 541. A reasonable accommodation is a measure that enables the employee to "perform the essential functions of the employment position." 42 U.S.C. § 12111(8); see also *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017) (Reasonable accommodation "is expressly limited to those measures that will enable the employee to work."); *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 546 (7th Cir. 1995) ("The duty of reasonable accommodation is satisfied when the employer does what is necessary to enable the disabled worker to work in reasonable comfort.").

An adverse employment action is not needed to prevail on a failure to accommodate theory. *AutoZone*, 630 F.3d at 638

n.1. Thus, the district court did not need to determine whether the defendants' refusal to waive the education condition was a denial of a bonus or a raise. That determination was only relevant to whether there was an adverse employment action and thus irrelevant to the failure to accommodate inquiry.

Bruno's request to waive the education condition was not a request for a measure that would enable him to do his essential job functions and thus not a request for reasonable accommodation. Rather, it was just a request for an increase in pay that was not earned. The pay bump provision in the contract was structured as an if/then: "If the Deputy Fire Chief maintains enrollment in an accredited college program leading to the achievement of a Bachelor's Degree, then the Employer will add a total of 2% ($2024.63) of annual salary to Deputy Fire Chief's base sum per annum." Bruno claims his aortic dissection rendered him unable to satisfy the "if" condition because attending college courses would have worsened his health, and thus the condition should have been waived. But the pay bump was not something Bruno was entitled to as of right just because he performed his essential job tasks. Bruno would have needed to go beyond his duties to obtain the pay bump. The defendants did not need to provide accommodations to allow Bruno to go beyond his essential job functions and thus attain the pay bump, let alone allow him to obtain the pay bump without satisfying the education condition.

Our decision in *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109 (7th Cir. 2001), reflects this point. There, we held that an employer who accommodated a disabled employee with a modified job position did not violate the ADA by failing to also provide that employee with higher wages because the job

responsibilities of that modified position did not entitle the employee to that higher wage. *Id.* at 1113, 1116. Here, because the pay bump did not depend on Bruno performing his essential duties, the defendants did not have to provide an accommodation that enabled him to obtain it because doing so would have been awarding him compensation he did not earn—that was not a measure that enabled Bruno to work.

Moreover, while the waiver would have entitled Bruno to more compensation without him having to jeopardize his health, it would not have impacted his ability to perform his job. Bruno conceded multiple times that—so long as he did not have to attend classes—he could perform the essential duties of his position without undermining his health and stressed that he had been performing satisfactorily without the pay bump. Attending college was not a requirement of his job. Bruno's request that he be compensated more for performing his essential duties because his health prevented him from attending and obtaining the pay bump was not a request for reasonable accommodation.

B

Bruno next argues that the district court erred in rejecting his disparate treatment theory premised on the defendants' decision to deny him a raise—which they concede suffices as the adverse employment action needed for recovery under this theory. Because the parties proceeded under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for disability discrimination claims, we do too. Under this approach, a plaintiff must first establish a prima facie case of discrimination by showing that he is a qualified person with a disability and suffered an adverse employment action because of his disability. See *Brooks v. Avancez*, 39 F.4th

424, 434 (7th Cir. 2022). If the prima facie case is made, the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for the adverse action. *Id.* If the employer meets its burden, the plaintiff must show that reason is pretextual. *Id.* In doing so, the plaintiff must demonstrate by a preponderance of the evidence that the employer's reason is a lie. *Id.* at 435. It is insufficient to merely prove that the reason was unfair, unethical, or mistaken; rather, the plaintiff must show that the employer's reason was not an honestly held belief. *Id.* at 435–36.

Because the parties contest only the district court's evaluation of pretext, we assume without deciding that Bruno established his prima facie case. The defendants' stated reason for not raising Bruno's salary is, in effect, that Bruno had been insubordinate. They assert he had failed to "separate from the ranks" because he undermined the Mayor and City leadership by, among other things, leaking confidential discussions with City leadership and criticizing City management decisions to rank-and-file firefighters. Bruno argues that this reason is pretextual because there is no written evidence of this failure to separate from the ranks and that he first heard of this specific concern during depositions in this litigation (and he notes that he had not heard of any trust issues the Mayor had until an August 2019 phone call with Ellexson).

Bruno's pretext argument is belied by the record and inadequate to show that the defendants' reason for not raising his salary was insincere. True, there was no written evidence of the insubordination concern. But Bruno admitted that Ellexson believed he had leaked information from a confidential discussion and that he had a counseling session with Ellexson covering the importance of keeping such discussions

confidential that predated the choice to not raise his salary. He also conceded that he contravened Ellexson's order to not speak with a KFD firefighter who had sued the City before he was presented with the second contract. Bruno effectively admits not only that he engaged in insubordination but also that the defendants genuinely believed that he had done so; this dooms his claim of pretext. See *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 478 (7th Cir. 2010).

## C

We next turn to Bruno's retaliation claim. To defeat summary judgment on a claim of retaliation under the ADA, a plaintiff must show: (1) statutorily protected activity; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. *Trahanas v. Northwestern Univ.*, 64 F.4th 842, 856 (7th Cir. 2023). Protected activity under the ADA includes opposition to "any act or practice made unlawful by this chapter" or participating in "an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). In other words, the ADA protects from retaliation those who have "engaged in activities protected by the ADA," *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018), not activities protected only by other antidiscrimination laws.

On appeal, Bruno identifies as protected activity only his continued contact with a KFD firefighter who had filed sex discrimination claims against the City. He expressly disclaims reliance on his January and August 2019 requests that the education condition be removed as his protected activity. The former firefighter did not raise any claims under the ADA, so Bruno's meetings with the former firefighter could not have been protected activity under the ADA. Accordingly, the

district court properly granted summary judgment for the defendants on Bruno's retaliation claim.

D

The parties agree that Bruno's IHRA and indemnification claims rise or fall with his ADA claims. *Tate v. Dart*, 51 F.4th 789, 793 (7th Cir. 2022) ("Illinois courts analyze IHRA claims under a framework that is practically indistinguishable from the ADA framework."). And as to indemnification, because the City need only indemnify its employees if those employees are found liable, the indemnification claim fails if the employees are not liable. See *Ybarra v. City of Chicago*, 946 F.3d 975, 981 (7th Cir. 2020). Therefore, because we conclude that the district court properly granted summary judgment to the defendants on Bruno's ADA claims, it also did not err in granting summary judgment for the defendants on Bruno's IHRA claims for the same conduct and his indemnification claim against the City.

AFFIRMED